COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1513
Industrial Claim Appeals Office of the State of Colorado
DD No. 14657-2024

---

Pavel Gershteyn,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Division of
Unemployment Insurance,

Respondents.

---

ORDER SET ASIDE

Division II
Opinion by JUDGE LUM
Fox and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 23, 2025

---

Pavel Gershteyn, Pro Se

No Appearance for Respondents

¶ 1     In this unemployment benefits case, claimant, Pavel Gershteyn, seeks review of a final order of the Industrial Claim Appeals Office (Panel) disallowing his claim for benefits during the week of February 11-17, 2024.  We set aside the Panel's order.

## I.     Introduction

¶ 2     Under section 8-73-107(1)(g)(I), C.R.S. 2024, a claimant is "eligible to receive benefits with respect to any week only if the [D]ivision finds that . . . [h]e or she is actively seeking work."  This case turns on the proper interpretation and application of a regulatory exception to this general rule.  *See* Dep't of Lab. & Emp. Regs. 2.4.4-2.4.6, 7 Code Colo. Regs. 1101-2.

## II.     Relevant Facts and Procedural History

¶ 3     The following facts are undisputed.  In December 2023, Gershteyn's former employer eliminated his position and placed him on a furlough.  Gershteyn filed a claim for benefits with the Division of Unemployment Insurance ("Division").

¶ 4     Shortly after filing his claim, Gershteyn called the Division to ask whether his status as a furloughed employee rendered him "job-attached" within the meaning of Regulations 2.4.4-2.4.6 and therefore exempted him from the general requirement that

1

claimants actively search for new employment. *See* § 8-73-107(1)(g)(I). A Division employee told Gershteyn that only a start date for employment triggered "job-attached" status. Acting on this advice, Gershteyn engaged in job search activities through Friday, February 9, 2024, when he accepted a job offer from a new employer and received a start date of March 4, 2024 — approximately three weeks after he accepted the job offer.

¶ 5 Presuming he was "job-attached" upon receiving the March 4 start date, Gershteyn performed no job search activities during the weeks of February 11-17 and February 18-24. At some point during the week of February 18-24, Gershteyn spoke with another Division employee who explained that "job-attachment" status only triggered upon an offer of employment from a claimant's *former* employer. Gershteyn resumed job search activities during the week of February 25-March 2.

¶ 6 A deputy for the Division determined that Gershteyn was not entitled to receive benefits the weeks of February 11-17 and 18-24 because Gershteyn had not engaged in job search activities during those weeks.

¶ 7    Gershteyn appealed the deputy's decision to a Division hearing officer, arguing that he had acted in good faith upon the Division's original advice and that fairness dictated that he receive benefits. The hearing officer agreed with the deputy that "job-attachment" status triggered only upon an offer from his former employer, and, thus, Gershteyn's acceptance of new employment had no effect on his job-attachment status.

¶ 8    Gershteyn appealed the hearing officer's decision to the Panel, who determined that the hearing officer had misconstrued the law. The Panel explained that section 8-73-107(1)(g)(I) generally conditions eligibility on the claimant's active efforts to secure employment. However, the Panel noted, Regulations 2.4.4-2.4.6, 7 Code Colo. Regs 1101-2, provide a two-week exemption from this requirement when a claimant accepts a job offer from a new employer. According to the Panel, since Gershteyn's "start date for his new job was March 4, 2024, he was *not* required to perform job search activities for a maximum of two weeks before that start date, which would be Sunday, February 18, 2024, through Saturday, March 2, 2024." However, the Panel found Gershteyn "*was required to perform job search activities during the week before this*

3

period; i.e., February 11-17, 2024." Thus, the Panel modified the hearing officer's order to disallow benefits for the week of February 11-17, 2024.

¶ 9    Gershteyn appeals, arguing that the Panel misinterpreted the applicable regulations, and that he enjoyed "job-attached" status during the week of February 11-17, 2024. We agree.

### III.    Analysis

¶ 10    We may set aside an order of the Panel premised on legal error. § 8-74-107, C.R.S. 2024. We review an agency's regulatory interpretations de novo but accord deference to an agency's reasonable interpretation of a regulation it administers. *Stell v. Boulder Cnty. Dept. of Soc. Servs.*, 92 P.3d 910, 915-16 (Colo. 2004). Thus, we set aside an agency's interpretation only "if it is inconsistent with the clear language of the statute or with the legislative intent." *Support, Inc. v. Indus. Claim Appeals Off.*, 968 P.2d 174, 175 (Colo. App. 1998).

¶ 11    Under section 8-73-107(1)(g)(I), a claimant is "eligible to receive benefits with respect to any week only if the [D]ivision finds that . . . [h]e or she is actively seeking work." However, Regulation

2.4.6 carves out an exception to this requirement for "job-attached" claimants:

> During the period of job attachment set forth in regulation 2.4.5, a job-attached claimant . . . shall not be required to search for work elsewhere . . . .

Dep't of Lab. & Emp. Regs. 2.4.6, 7 Code Colo. Regs. 1101-2. A claimant may achieve job-attachment status under a variety of circumstances, including where they have accepted new employment:

> A claimant who has an assurance of new work shall be considered job-attached to the extent permitted by regulation 2.4.5, and such period shall commence with the week in which the offer of new work was accepted. "New work" for the purposes of this section 2.4 shall mean a job offer . . . made by any employer other than the employer from whom the claimant most recently separated.

Dep't of Lab. & Emp. Regs. 2.4.4, 7 Code Colo. Regs. 1101-2.

Under Regulation 2.4.5, "[j]ob attached status may be granted for a period of no more than two weeks to a claimant with a promise of new work." Dep't of Lab. & Emp. Regs. 2.4.5, 7 Code Colo. Regs. 1101-2.

5

¶ 12 In interpreting the above provisions, the Panel correctly determined that Gershteyn's offer of new employment allowed him two weeks' job-attachment status. However, the Panel held that period began two weeks before Gershteyn's start date of March 4, 2024. That interpretation fails to give effect to Regulation 2.4.4's express mandate that the job-attachment period "shall commence with the week in which the offer of new work was accepted."

¶ 13 Under Regulation 2.4.4's plain language, because Gershteyn accepted the employment offer on February 9, 2024, his job-attachment period began that week. And under Regulation 2.4.5, it extended through the week of February 11-17.[1] Thus, Gershteyn was exempted from searching for work during the week of February 11-17, 2024.

¶ 14 Because the Panel incorrectly determined that Gershteyn was required to perform job search activities during a week that he was

---

[1] We need not, and do not, decide exactly when Gershteyn's job-attachment status began. Even if it began as early as Sunday, February 4, see Dep't. of Lab. & Emp. Regs. 1.3.5, 7 Code Colo. Regs. 1101-2 (defining "calendar week" as "seven consecutive days beginning at 12:01 a.m. on Sunday and ending at midnight on the following Saturday"), Gershteyn was "job attached" during the week of February 11-17.

deemed job attached under Regulations 2.4.4-2.4.6, we conclude that the Panel erred in disallowing his claim for benefits during the week of February 11-17.

## IV. Disposition

¶ 15     The Panel's order is set aside.

JUDGE FOX and JUDGE GOMEZ concur.